The Honorable. The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Jose O. Cintron-Ortiz, Appeal No. 20-1366. Attorney Lerman, please introduce yourself for the record to proceed with your oral argument. Good morning, Your Honors. I'm Kevin Lerman with the Federal Public Defender in San Juan, Puerto Rico. I represent Jose Cintron-Ortiz. With the Court's permission, I'd like to reserve two minutes for rebuttal. Yes. May it please the Court. The District Court erroneously revoked Jose Cintron's supervised release term based on an adverse hearsay narrative that should have been excluded. Three points compel reversal under the right versus cause balancing test. First, the narrative was unreliable by every measure applied by the Court. Second, the government lacked good cause for denying confrontation. And third, the hearsay narrative was essential to the revocation decision, making the error harmful. The first two points, unreliability and lack of cause, are essential to the Court's balancing test. And since the hearsay narrative left no independent basis for revocation, the error's harm is obvious. Mr. Lerman, let me ask you this. Let me ask you this. The probation officer testified that she supervised your client, that she reviewed the video, and that she recognized your client. Now, whether her reasons for giving that statement were not necessarily, in your opinion, supportable, that was her testimony, that it was him who fired the shot and she recognized him. Why is that not an independent basis, even excluding the hearsay? Your Honor, that was not an independent basis because the record doesn't reflect a stand-alone finding that there was an identification at the moment in question. And if we look to when probation officer Oliveras says that she identified Mr. Cintron, yes, she identifies him inside the bar. But then, on cross-examination, she admits that what she's saying is she sees somebody with clothing that matched his clothing inside the bar. We have a brief statement on redirect where the government... Didn't she also say she recognizes his build and his walk? She says that on redirect, and she says, I've watched the videos, and despite not seeing faces, not seeing tattoos or scars, she says, I recognize those based on those videos. Well, what videos? Because the only videos that you can recognize his build, etc., those are inside of the bar. She also leaves out a key part that Detective Leon mentions, and he says, well, I see, when I look at the video, I see some brawl, some fistfight with somebody on a horse. That's something that Oliveras leaves out. And that adds on top of the fact that the image that she's looking at, she's only shown one still image, which is a snapshot. That's why we included still images in the reply brief, because she's shown... You can see the great distance and the low quality of the video recording, and you can see that the view is obstructed by a tree and cars. What is the offense or the conduct that the district court understood your client to have engaged in that justified the revocation? As far as I can understand it, it's firing shots with a gun toward people and horses. So as long as there is an identification independent of the witnesses that would be reliable that he did that activity, there would potentially be an independent basis. And you're not suggesting that there was any need to show that there's any doubt as to what he was firing at insofar as he could be identified as the person firing. Am I right about that? If I understand your question right, I think so. And it goes to the heart of the issue, because there is an evidence that there's an identification at the critical moment when someone appears to be firing on the video. So it's not that he was firing and he wasn't trying to hit somebody. If there were, then there's no question that there would be a basis for the district court's finding. Is that right? Once there's an identification of him, of the person shown in the video shooting as being your client, that would be enough to support the district court's finding. You don't dispute that, right? Well, I think that that scenario is still not without gray area. Because if that was absolutely established in that identification and there weren't issues with it. Like, for example, we have a case like Rondeau where the witnesses are interviewed 13 times. There's really corroboration between the statements. That's nothing like here where there's nothing corroborating these unsworn hearsay statements. And I think that there's some confusion in the record. And we do object during the claims where Detective Leone and the probation officer assert that they're identifying someone. It's impossible to pull apart. The prejudice argument is, although somebody did testify that your client was the one shooting the gun, that person wasn't there. And the stronger evidence would be testimony that it was your client who fired the gun who were there. And the only people who were there are the people that you say there was either a lack of reliability about their testimony or there was no good cause for permitting them to be represented essentially through hearsay. Is that the idea? That's essentially the idea. But there's a lot to unpack because we have a hearsay narrative that's pieced together. We only have at one point where Detective Leone says, I talked to somebody named Gerardo Cruz or Gerardo Morales. And this is the guy that told me this account. And he says that the person who did this is the boyfriend of my ex-wife. But there's no exploration of any motive. There's no attempt to explore, for example, any of the other details that come out. We have Gerardo saying that he only talks about one shooter. There's no mention of anyone throwing punches. Mr. Lerman, if the film was clearer and the probation officer said, yeah, that's definitely the guy I'm supervising, you wouldn't have a problem. That would be a clear independent basis for the court's finding. Your argument seems to be that because the film outside is less reliable, that the court should not have relied on it. Essentially. But we still have an issue. The government's cause for not producing witnesses is linked to the necessity of the evidence. When we have a case like Comito, for example, which recognizes that the necessity of the essential features of the evidence create a greater interest in testing it by exercising the confrontation right. So if that evidence is so essential. Counsel, let me interrupt you because I'm trying to connect your answer to Judge Thompson's question. I thought her question went back to this notion of harmless error that had the video been properly authenticated. The identification been an appropriate inference at the appropriate time that the rest of this stuff really doesn't matter in the end. Are you responding to that? Are you talking about something else? Yes, and I'm sorry if I wasn't clear. I'm responding to that because I'm trying to link that back to balancing test. And if we're balancing neither, neither the right nor the government's cause is a static inquiry. If we have a very strong ID. Mr. Lerman, just to go back to Howard and to Thompson, you're asking each about the harmless error point, not about cause or reliability. They're asking you to assume you're right about cause and reliability as to the other, as the hearsay testimony. They're asking if the testimony of the probation officer identifying your client in the video were clear enough, wouldn't that render any argument you have about the hearsay testimony harmless? If that were the case, yes. Yes, it would. OK, and so the reason it's not clear enough, you say, is because the quality of the video and the nature of the testimony that the probation officer gave about the identification combined to raise enough doubt about it. That it would be sensible to think that the hearsay testimony effectively bolstered it in the eyes of the district court. Yes, it had to. Before the court heard any video, the government, and we can listen to the government's words, the government tells us that the video needs interpretation. It obviously needs interpretation because it just looks like a melee of people. Then they spend the first 23 pages in the transcript explaining what the court's going to see, and then we have the hearsay narrative laid on top of what the court is actually watching with the video to try to convince the court that that's what he's seeing. Even then, once we get to what the court found, because this is essentially dealing with the Morris v. Confrontation right and the rights in a revocation, the court still has to explain its decision. The court didn't find that the video alone or a probation officer's view alone established what happened. The court says after hearing testimony from Leon, Officer Oliveras, and listening to arguments of the defense and the prosecution, that's why he revoked. Thank you, counsel. You've reserved some time. If you would mute your audio and video. Ms. Harnwell-Davis, you can unmute your audio and we can see you. I can see you, Your Honor. Good morning. Natasha Harnwell-Davis on behalf of the United States. The video evidence here combined with the non-hearsay testimony means that any error was harmless, and if the court wishes to reach the merits, the district court did not abuse its discretion. Why not? How is that proper balancing? And the government offered no reason whatsoever for not having any prescient witnesses there. Two points, Your Honor. The government did present that the witnesses were unavailable because they had left Puerto Rico, which is a valid reason that this court has recognized, starting with Gannon. Well, the Supreme Court has recognized starting with Gannon at footnote 5. But there's nothing in the record that they were unwilling to come back to testify. That's true, Your Honor. Leaving in and of itself doesn't mean that they're unavailable. This court has recognized unavailability by leaving the district as a reason not to call a declarant. And you can see that in this court's cases in Moreno, where the government witness was located in Texas. You can see that in Fontana's, where the government witness was on vacation. And you can see that in Bueno Beltran, where the Coast Guard was located in Florida, but the case was being heard in Puerto Rico. Didn't the detectives interview other witnesses who were at the scene? Your Honor, the record says that the detective interviewed seven to eight witnesses. And you can account for five of them with four victims and mizzenid. So you're left with two to three. It's not in the record, but it can be inferred from the record that those are people at the bar, such as the bartender or the bar owner, who the detective had to interview in order to obtain the video. And the owner of the horse, because the photos were taken at the corral. So neither of those individuals necessarily would have seen the incident, even if the detective, even if they had been called by the government. But none of that was presented to the district court. That's only speculation. If you look at, I mean, having taken a look at the film, I mean, there were other people outside. That is correct, Your Honor, but Mr. Cintron's right only extends to examine the witnesses that the government does call. The inquiry that this court has established doesn't assess whether or not the government could have called other people. It assesses whether the government had good cause for not bringing the people who's out of court statements it wished to introduce. So returning back to the harmlessness where you have such. Just know before you get there, what was offered and what did the court rule with respect to reliability? There was no express statement as to reliability, but the court did hear from both defense counsel and the government that reliability was a component of the test. And don't our cases require an explicit balancing, including including reliability? Not necessarily, Your Honor. While reliability is a factor, I believe it's Fontana's where this court affirmed, despite the government not excuse me, not the government, despite the court not making any finding as to either factor. And I think that was grounded in a harmlessness analysis. So the government did also wait. Could you repeat that one? Yes, absolutely. The case in Fontana's, I believe, I believe is Fontana's. The district court did not make any ruling as to the good cause analysis. So it didn't assess reliability and it didn't assess availability. And we said that was not error. Yes, Your Honor. This court said it was harmless error. So they have ruled on error, but it was affirmed both on harmlessness and the court made an assessment as to the reliability. This court made an assessment as to the reliability. I also want to note that this court has previously said that a strong showing of one factor, either reliability or availability, unavailability, can counter a weaker showing of another factor, the other factor, in order to establish good cause. So I take it then your point is that even if the district court did not make findings with respect to reliability, so long as there was something proffered and we can tease it out of the record, we can do that ourselves. So what was offered with respect to reliability? Reliability, primarily the video evidence, Your Honor, because the video evidence corroborates what the declarant said, which was that Mr. Centrone shot them while they were standing outside the bar. So the video evidence goes both to the harmlessness, which I believe is the easiest way for this court to resolve the case.  So I also want to pick up a thread that my friend was addressing, which is the probation officer's testimony, which gives an independent basis for identifying Mr. Centrone in this case. She testified at page 191 of the record that she identified him in the video based on her personal knowledge of him. And that she could identify him initially through his face and demeanor. That's at page 198 of the record, which then allowed her to follow him through the video based on his clothes. I'll also just point out that I think one of the easiest ways to follow him through the video is the way that he carries his two beverages across the parking lot. So if you watch the outside videos and pay attention in the upper right hand corner, you'll see a man who matches. You can you can link him through the videos, the beginning videos. And then you can watch him cross the parking lot, carrying the two drinks, set them on a car and then turn around, start punching someone on a horse and then shooting a gun into the crowd. Could you go back to the reliability for a second? If we thought there was a certain bootstrapping aspect to treating the video as the ground for concluding that the declarant's testimony was, the declarant's statements was reliable. What independent of the video makes those statements by the declarants reliable and what was shown in that regard? If I remove the video from the reliability assessment. Yes. We're still left with the district court's findings at 213 to 214, where he credits Detective Leone and the probation officer's testimony that it was Mr. There's a chance that you may be frozen. I don't believe so. OK, no apologies. Your honors. So he's just waiting for you to answer the question. Apologies, Your Honor. So you have the district court's finding at 213 to 214. You also have a page 171. No, no, no. I don't want to ask about the final. What about the declarants statements? This is not the person testifying about them. What about it would make it reliable what they're saying and what he's saying they're saying? If we don't have the video to bolster the conclusion that a statement that they said it was him and then there's this video that shows it was him. If we take that video out, what is it about what he's saying that people at the bar that night witnessed that makes those statements reliable? You have the personal relationship. So you have confidence that Mr. Gerardo knew Mr. Cintron and that the minor daughters knew Mr. Cintron because Mr. Cintron's girlfriend was their mother. So you can be confident that those individuals knew who Mr. Cintron was. I think returning again to the probation officer. Her testimony is really, I think, what cinches this case where you do have the video in this case. You do have the probation officer who supervised Mr. Cintron for three years. And you also have the detectives own independent knowledge of Mr. Cintron because he investigated him for prior crimes and testified that he could recognize him, quote, immediately because I know him. And that's at page 152 of the record. I think, again, the easiest way through this case is harmlessness, unless the court has other questions. I just have one. So if a judge makes a determination that the hearsay evidence is going to be admitted, and if it is not established to be sufficiently reliable under our precedent in the absence of a later admitted video, is there a case that says we can consider the later admitted video that was not in issue, was not in evidence at the time that the judge made the reliability determination? If there is a case, can you just tell me what the name of it is? I want to make sure I understand the question, which is that if we were to the video was not presented to the court at the time the court made the ruling. So could the court make a ruling based on that later video? Yeah. No. This court. Could this could this court? Obviously, that court didn't. OK, district court did not write. It said admissible. Yes. Your argument is that part of what makes the hearsay statements reliable is that they're corroborated by the later admitted video. And I just want to know if there's a case that makes that connection for us. I believe the closest case, and I'm going to sound like a broken record, but the closest case is Fontana's. Fontana's deals with surveillance video. It deals with the reliability questions that your honors have been asking about. So I would urge the court to return to that case because I think it is the closest on point case where the court both reviewed the district court's ruling and assess the evidence under an abuse of discretion standard and under the catechist non-constitutional error. Harmlessness standard.  Thank you. Mr. Good morning, your honors. Again, Kevin Lerman on behalf of. You know, I'd like to begin back to Fontana's. The because that actually illustrates the difference between this case and other cases where there is where the court does find hearsay reliable there. There's a detailed explanation. There's a level of certainty in the identification by the witness who didn't testify, and there's a consistency of statements, and they're memorialized in writing. There's also care in the process of the law enforcement officers that are obtaining those statements. That's a sharp contrast to here, making this case far more like a case like Tobias, where there isn't any basis or explanation for allowing unsworn verbal hearsay. The court, even though it affirmed in Marino, it noted that the government relied on unsworn verbal hearsay alone rather than, for example, an affidavit, and it warned that we expect the government to have an explanation of this sort ready in future cases. Prosecutors would do well to remember that warning. Could you just address the government, if I understood it, was making an argument that when unavailability is a strong enough basis for admitting the hearsay statements, that can supply a reason to permit their admission independent of a reliability finding. Is that true, or did I misunderstand the government? It seems odd to me that you could justify putting an unreliable testimony based on the fact that people were unavailable. I don't think that that's true under Rule 32.1 or any case that this court has decided. It goes to the fundamentals of what this right safeguards, and it's not just like this court said in Correa-Torres, it's not just about protecting the obvious stake of the accused in their own liberty, it's to serve the sovereign's interest in making important legal determinations that are informed by an accurate account of verified facts. You can't have an accurate account of verified facts if the evidence is not reliable, as it wasn't in this case, and this is why we're asking the court to vacate the judgment. How do you respond to the government's assertion that reliability can be found in the fact that they knew Cintron, that the people who suffered the injuries knew Cintron? That, I think, doesn't tell you who fired the shots, because if you have these verbal statements, you don't have any background from them. And so I agree with Your Honor in noting that that's speculation. I think the better speculation is that there wasn't anyone who said anything strong enough for this to become a state court case, that's why there wasn't a state court case, and there's likely problems with those statements that were given. So I don't think those can be relied upon. I don't think that, especially, you have a case where there's a shooter in white that shoots, and there's a major melee of a crowd of people doing different things, and so maybe if there had been a signed and sworn affidavit of what somebody saw, because we don't know how many layers of hearsay are baked into Detective Leon's statements. So this case is even more unreliable than I think what the case has seen in analyzing evidence like in Taveras and other courts have seen in Comito and Coleman. Thank you, Mr. Lerman. Thank you, Your Honor. That concludes argument in this case. Attorney Lerman and Attorney Harnwell Davis, you should disconnect from the hearing at this time.